**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SCOTT CARVELL, | : | Civil No. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| H2, LLC and BURNELL HIESTAND, | : | |
| | : | |
| Defendants. | : | Jury Trial Demanded |

**COMPLAINT**

Plaintiff Scott Carvell ("Plaintiff"), by and through his undersigned counsel, hereby submits his complaint against Defendant H2, LLC and Burnell Hiestand ("Hiestand") (collectively, "Defendants"), and avers as follows:

**PRELIMINARY STATEMENT**

1.     This is a civil action brought by Plaintiff against Defendant H2, LLC ("H2"), his former employer, and Defendant Hiestand ("Hiestand), the owner and Executive Vice President of Defendant H2, pursuant to the Stored Communications Act, 18 U.S.C. § 2701, *et seq*., the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*, the Pennsylvania Wiretap Act, 18 Pa. Cons. Stat. § 5701, *et seq.*, and Pennsylvania common law theories of invasion of privacy.

2.     During his employment with Defendant H2, Plaintiff was issued a work computer. Upon the separation of his employment with Defendant H2, Plaintiff returned his work computer to Defendant H2.

3.     After Plaintiff returned his work computer to Defendant H2, Defendants searched the computer and accessed, without authorization, Plaintiff's emails in his personal Gmail account.

4. In connection with Defendants' unauthorized access to Plaintiff's personal Gmail account, Defendants obtained, retained, and disclosed Plaintiff's private, confidential, and privileged emails shortly thereafter in connection with a civil action that Defendant H2 commenced against Plaintiff, among others, in the Court of Common Pleas of Lancaster County, Pennsylvania.

5. As a result of Defendants' unlawful conduct, as further described herein, Plaintiff has suffered and continues to suffer significant harm for which he seeks redress in this action.

## PARTIES

6. Plaintiff is an adult individual who resides at 560 Green Hills Road, Birdsboro, Pennsylvania 19508.

7. Defendant H2 is a Pennsylvania limited liability company with a principal place of business located at 1336 Loop Road, Lancaster, Pennsylvania 17601.

8. Defendant Hiestand is an adult individual who, at all times relevant to Plaintiff's complaint, was the owner and Executive Vice President of Defendant H2.

## JURISDICTION AND VENUE

9. The Court has original subject matter jurisdiction over the federal claim that Plaintiff has asserted herein pursuant to 28 U.S.C. § 1331.

10. The Court has supplemental jurisdiction over the state law claims that Plaintiff has asserted herein pursuant to 28 U.S.C. § 1367.

11. Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391.

2

**FACTUAL AVERMENTS**

12. Defendant H2 is engaged in the business of selling, furnishing, and installing glass, shower doors, and custom closet products and systems, including in central and southeastern Pennsylvania.

13. Plaintiff was formerly employed by Defendant H2 as a sales employee, and his assigned area was the Philadelphia market.

14. Plaintiff's employment with Defendant H2 began on or about October 15, 2018, and ended on or about May 12, 2026.

15. During his employment with Defendant H2, Plaintiff was provided a work phone and computer.

16. Pursuant to Defendant H2's Computer and E-Mail Usage policy ("Electronic Communications Policy" or "Policy"), computers, email, and internet access are provided to company employees to assist them with completing their work, improving their efficiency, and obtaining work-related data and technology. Attached hereto as **Exhibit A** is a true and correct copy of Defendant H2's Employee Handbook containing this Policy.

17. In addition, the Electronic Communications Policy states that the computers, including the email system, Internet access, computer files, and software provided to the employees, are property of Defendant H2 and that, as a result, employees have no implied right to privacy while using company computers.

18. However, the Electronic Communications Policy also allows employees to use their work computers for brief, personal use.

19. During his employment, Plaintiff used his personal Gmail account, scarvell88@gmail.com ("Gmail account" or "scarvell88@gmail.com") on his work computer.

3

20.     Plaintiff's Gmail account was hosted on a third-party server, namely, Google, and not locally on Defendant H2's own server or infrastructure.

21.     In and around February to April 2026, Plaintiff had communications with his personal attorney, Grace C. Nguyen Bond, Esquire ("Attorney Bond"), using his Gmail account.

22.     In connection with these privileged and confidential communications that Plaintiff had with Attorney Bond, Plaintiff sent a proposed amended operating agreement from his Gmail account to Charles Semken ("Semken") on May 1, 2026.

23.     Semken was formerly employed by Defendant H2. More specifically, Semken began his employment with Defendant H2 on or around April 5, 2021, and ended his employment in or around January 2025.

24.     Semken formed Elevation Glass & Closet, LLC ("Elevation Glass"), a Pennsylvania limited liability company with a principal place of business located at 7830 Moyer Road, Harrisburg, Pennsylvania 17112.

25.     The proposed operating agreement that Plaintiff sent from his Gmail account to Semken on May 1, 2026, pertained to, *inter alia*, Plaintiff acquiring partial ownership in Elevation Glass.

26.     Additionally, when Plaintiff sent the proposed operating agreement to Semken on May 1, 2026, Plaintiff initially sent the email to Semken's old email account, csemken@h2-llc.com, which Semken had maintained when he was employed by Defendant H2.

27.     Plaintiff inadvertently sent the email described in Paragraph 26 to Semken's old email account because Semken's email address had auto-populated.

28.     Shortly thereafter, Plaintiff discovered his inadvertent error and re-sent the email from his Gmail account to Semken's new email account, csemken@elevation-gc.com.

29. On or about May 1, 2026, Defendants became aware of the inadvertent email that Plaintiff sent to Semken's old email account.

30. Upon information and belief, Defendants still had access to Semken's old email account on May 1, 2026.

31. Eleven (11) days later, on May 12, 2026, Defendant H2 terminated Plaintiff's employment. On that same date, Plaintiff returned his work phone and work computer to Defendant H2.

32. One week later, on May 19, 2026, Defendant H2, through counsel, filed a civil complaint, petition for preliminary injunction, brief in support thereof, and accompanying exhibits in the Court of Common Pleas of Lancaster County, Pennsylvania. The action is docketed at Case No. CI-26-03523 ("State Court Action").

33. Named as the defendants in the state court action are Elevation Glass, Plaintiff, Semken, and Andrew Beck ("Beck") (collectively, "State Court Defendants").

34. Beck, like Plaintiff and Semken, was formerly employed by Defendant H2. More specifically, Beck began his employment with Defendant H2 on or about March 1, 2016, and ended his employment on or about April 25, 2025.

35. Beck, similar to Plaintiff and Semken, has part-ownership in Elevation Glass.

36. In Defendant H2's State Court Action, Defendant H2 sought a preliminary injunction against the State Court Defendants to prevent them from using, disclosing, transmitting, relying on, or benefiting from Defendant H2's alleged confidential proprietary, and trade secret information.

37. In support of its complaint and petition for preliminary injunction, Defendant H2 specifically avers that, after Plaintiff returned his work computer, Defendant H2 reviewed the work

computer and discovered various communications that were sent to and from Plaintiff's Gmail account. Plaintiff is without sufficient information to form a belief as to how Defendants and/or Defendant H2's agents, employees, or representatives accessed Plaintiff's private Gmail account.

38.    In further support of its complaint, petition for preliminary injunction, and brief, Defendant H2 attached, as exhibits, these various communications that were sent to and from Plaintiff's Gmail account. Attached hereto as **Exhibit B** are true and correct copies of Defendant H2's exhibits that it filed in the State Court Action.

39.    These personal communications that were sent to and from Plaintiff's Gmail account, range in time from February 2026 to May 2026, and contain, *inter alia*, private, privileged, and confidential communications that Plaintiff had with Attorney Bond, including, but not limited to, the following:

    a.  February 6, 2026, at 11:49 a.m. Plaintiff (bigscottyc@me.com) sent an email to Attorney Bond (gcnb@blakingerthomas.com).

    b.  February 26, 2026, at 9:46 a.m., Plaintiff (scarvell88@gmail.com) sent a follow-up email to Attorney Bond (gcnb@blakingerthomas.com).

    c.  March 12, 2026, at 9:53 a.m., Attorney Bond sent a responsive email to Plaintiff (scarvell88@gmail.com).

    d.  March 12, 2026, at 11:59 a.m., Plaintiff (scarvell88@gmail.com) sent an email to Attorney Bond (gcnb@blakingerthomas.com).

    e.  March 12, 2026, at 12:33 p.m., Attorney Bond (gcnb@blakingerthomas.com) sent a responsive email to Plaintiff (scarvell88@gmail.com).

    f.  March 31, 2026, at 11:27 a.m. Plaintiff (scarvell88@gmail.com) sent an email to Attorney Bond (gcnb@blakingerthomas.com), regarding review of an operating agreement.

    g.  April 1, 2026, at 9:00 a.m., Attorney Bond (gcnb@blakingerthomas.com) sent an email to Plaintiff (scarvell88@gmail.com), regarding review of the operating agreement.

    h.  April 17, 2026, at 9:16 a.m., Attorney Bond (gcnb@blakingerthomas.com) sent an email to Plaintiff (scarvell88@gmail.com), regarding the operating agreement.

i.   April 17, 2026, at 9:30 a.m., Plaintiff (scarvell88@gmail.com) sends an email to Attorney Bond (gcnb@blakingerthomas.com) regarding the operating agreement.

j.   May 1, 2026, 7:42 a.m., Attorney Bond (gcnb@blakingerthomas.com) sent an email to Plaintiff (scarvell88@gmail.com) regarding the proposed operating agreement. Notably, the agreement contains work subject to the work product doctrine.

k.   May 1, 2026, at 10:16 a.m., Plaintiff (scarvell88@gmail.com) inadvertently sent an email to Semken at his prior email account (csmeken@h2-llc.com).

l.   May 1, 2026, 12:01 p.m., Plaintiff (scarvell88@gmail.com) re-sent the email to Semken's correct Elevation Glass email account.

m.   May 13, 2026, at 7:58 a.m., Plaintiff (SCarvell@elevation-gc.com) sends email to his personal account (scarvell88@gmail.com) based on email chain with Semken on May 12, 2026.

40.   Following the filing of Defendant H2's complaint, preliminary injunction, and supporting brief on May 19, 2026, the Court of Common Pleas of Lancaster County, Pennsylvania held a hearing in the State Court Action on May 29, 2026.

41.   During the May 29, 2026 hearing in the State Court Action, Defendant H2's witnesses confirmed, consistent with its court filings, that Defendants reviewed Plaintiff's work computer after he returned it to Defendant H2 on May 12, 2026, accessed Plaintiff's Gmail account on that computer, and obtained and retained private, privileged, and confidential emails that were sent to and from Plaintiff's Gmail account.

42.   Particularly relevant here, Defendant Hiestand testified, under oath, at the preliminary injunction hearing that he personally accessed Plaintiff's emails from Plaintiff's Gmail account.

43.   Accordingly, based on the foregoing, Defendants unlawfully accessed, obtained, retained, and disclosed Plaintiff's private, privileged, and confidential email communications from his Gmail account.

44. When Defendants accessed and obtained Plaintiff's private, privileged, and confidential email communications from his Gmail account, those communications were hosted on Google, a third-party server, not on Defendant H2's own server or infrastructure.

45. When Defendants accessed, obtained, retained, and disclosed Plaintiff's private, privileged, and confidential email communications from his Gmail account, Defendants did not have Plaintiff's authorization or consent, whether express or implied, to do so.

46. When Defendants accessed, obtained, retained, and disclosed Plaintiff's private, privileged, and confidential email communications from his Gmail account, Google hosted, maintained, and stored Plaintiff's emails via its own server and infrastructure.

47. When Defendants accessed, obtained, retained, and disclosed Plaintiff's private, privileged, and confidential email communications from his Gmail account, Plaintiff was no longer employed by Defendant H2.

48. Google authorized Plaintiff to access his Gmail account; Google did not authorize Defendants to access Plaintiff's Gmail account.

49. In addition, Plaintiff's Gmail account was password protected. Plaintiff's use of password protection to secure his Gmail account further demonstrates that only Plaintiff's access to the account was authorized.

50. Despite the fact that many of the emails in Plaintiff's Gmail account contained privileged and confidential communications between Plaintiff and his attorney (*i.e.*, Attorney Bond), Defendants neither notified Plaintiff or Plaintiff's attorney that these emails had been accessed, nor took any affirmative steps to return them or delete them from the computer. Instead, Defendant H2 publicly disclosed these privileged and confidential emails by filing them in connection with the State Court Action.

51.     Upon learning that Defendants had accessed his Gmail account and obtained, retained, and disclosed private, privileged, and confidential email communications from his Gmail account, Plaintiff changed his password and/or deleted his account on or around May 19, 2026.

52.     Upon information and belief, Defendants actively accessed, in real time, Plaintiff's email communications from May 1, 2026, to May 19, 2026.

**COUNT I – STORED COMMUNICATIONS ACT,**
**18 U.S.C. § 2701, *et seq.***

53.     Plaintiff incorporates by reference Paragraphs 1 through 52 as if fully restated herein.

54.     The Stored Communications Act ("Act"), codified at 18 U.S.C. § 2701, *et seq.*, was in effect at all times relevant to Plaintiff's complaint.

55.     Defendants and/or Defendant H2's agents, employees, and/or representatives, while acting in the course and scope of their employment, knowingly, intentionally, and willfully accessed Plaintiff's Gmail account without authorization and obtained, retained, and disclosed private, privileged, and confidential emails that were hosted and stored by Google's server and infrastructure.

56.     Plaintiff never consented to Defendants and/or Defendant H2's agents, employees, and/or representatives accessing the emails in Plaintiff's Gmail account or to obtaining, retaining, and disclosing the emails that were hosted and stored by Google's server and infrastructure.

57.     While Defendant H2 has an Electronic Communications Policy, that Policy pertains to the company's own email system and infrastructure where emails are hosted and stored locally; it does not authorize access to employees' personal email accounts where such emails are stored on third-party servers and infrastructures, such as Google. To the extent that Defendant H2's Electronic Communications Policy attempted to create an employee's implied consent to authorize

such access to the employee's personal email accounts, such Policy is in direct violation of the Act.

58. Based on the foregoing, Defendants and/or Defendant H2's agents, employees, and/or representatives intentionally accessed without authorization a facility through which an electronic communication service is provided or intentionally exceeded an authorization to access that facility, within the meaning of the Act.

59. Accordingly, Defendants and/or Defendant H2's agents, employees, or representatives violated the Act, and Defendant H2 is liable for such acts and/or omissions of its agents, employees, or representatives under a theory of *respondeat superior* and the rules of agency.

60. Additionally, the acts and/or omissions of Defendants and/or Defendant H2's agents, employees, and/or representatives were outrageous and deliberately taken with reckless indifference to and conscious disregard for Plaintiff's federally protected rights under the Act.

61. The acts and/or omissions of Defendants and/or Defendant H2's agents, employees, and/or representations were so outrageous, deliberate, and willful as to entitle Plaintiff to punitive damages from Defendants in order to punish and deter Defendants, Defendant H2's agents, employees, and/or representatives, and others from similar conduct.

62. Plaintiff has been and continues to be harmed as a direct and proximate result of Defendants and/or Defendant H2's agents, employees, and/or representatives' acts and/or omissions.

63. Plaintiff has suffered damages, including but not limited to emotional pain and suffering, mental distress, humiliation, and embarrassment.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, granting all such relief as is appropriate pursuant to 18 U.S.C. § 2701, *et seq.*, including statutory damages, compensatory damages, punitive damages, Plaintiff's reasonable attorneys' fees, the costs of this action, and any such further relief as the Court deems just and proper.

### COUNT II – THE FEDERAL WIRETAP ACT, 18 U.S.C. § 2510, *et seq.*

64.     Plaintiff incorporates by reference Paragraphs 1 through 63 as if fully restated herein.

65.     The Federal Wiretap Act ("Federal Wiretap Act"), codified at 18 U.S.C. § 2510, *et seq.*, was in effect at all times relevant to Plaintiff's complaint.

66.     Defendants and/or Defendant H2's agents, employees, and/or representatives, while acting in the course and scope of their employment, knowingly, intentionally, and willfully intercepted, disclosed, and used Plaintiff's email communications in his Gmail account.

67.     The interception of Plaintiff's email communications by Defendants and/or Defendant H2's agents, employees, and/or representatives occurred contemporaneously with the transmission of those email communications.

68.     Plaintiff never consented to Defendants and/or Defendant H2's agents, employees, and/or representatives intercepting, disclosing, and using the email communications in Plaintiff's Gmail account.

69.     Based on the foregoing, Defendants and/or Defendant H2's agents, employees, and/or representatives intentionally intercepted, disclosed, and used Plaintiff's email communications within the meaning of the Federal Wiretap Act.

70.     Accordingly, Defendants and/or Defendant H2's agents, employees, or representatives violated the Federal Wiretap Act, and Defendant H2 is liable for such acts and/or omissions of its agents, employees or representatives under a theory of *respondeat superior* and the rules of agency.

71.     Additionally, the acts and/or omissions of Defendants and/or Defendant H2's agents, employees, and/or representatives were outrageous and deliberately taken with reckless indifference to and conscious disregard for Plaintiff's federally protected rights under the Federal Wiretap Act.

72.     The acts and/or omissions of Defendants and/or Defendant H2's agents, employees, and/or representatives were so outrageous deliberate, and willful as to entitle Plaintiff to punitive damages from Defendants in order to punish and deter Defendants, Defendant H2's agents, employees, and/or representatives, and others from similar conduct.

73.     Plaintiff has been and continues to be harmed as a direct and proximate result of Defendants and/or Defendant H2's agents, employees, and/or representatives acts and/or omissions.

74.     Plaintiff has suffered damages, including but not limited to emotional pain and suffering, mental distress, humiliation, and embarrassment. WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, granting all such relief as is appropriate pursuant to 18 U.S.C. § 2510, *et seq.*, including statutory damages, compensatory damages, punitive damages, Plaintiff's reasonable attorneys' fees, the costs of this action, and any such further relief as the Court deems just and proper.

12

## COUNT III – PENNSYLVANIA WIRETAP ACT,
### 18 Pa. Cons. Stat. 18 U.S.C. § 5701, *et seq.*

75.     Plaintiff incorporates by reference Paragraphs 1 through 74 as if fully restated herein.

76.     The Pennsylvania Wiretap Act ("PA Wiretap Act"), codified at 18 Pa. Cons. Stat. 18 U.S.C. § 5701, *et. seq.*, was in effect at all times relevant to Plaintiff's complaint.

77.     Plaintiff engaged in electronic communications through his Gmail account.

78.     Plaintiff possessed a reasonable expectation that the electronic communications he engaged in through his Gmail account would not be intercepted, disclosed, or used.

79.     Plaintiff's expectation – that the electronic communications he engaged in through his Gmail account would not be interpreted, disclosed, or used – was a justifiable expectation under the circumstances.

80.     Plaintiff's expectation – that the electronic communications he engaged in through his Gmail account would not be interpreted, disclosed, or used – is an expectation that society is prepared to recognize as reasonable.

81.     Defendants and/or Defendant H2's agents, employees, and/or representatives, while acting in the course and scope of their employment, knowingly intentionally, and willfully intercepted, disclosed, and used Plaintiff's email communications in his Gmail account.

82.     The interception of Plaintiff's email communications by Defendants and/or Defendant H2's agents, employees, and/or representatives occurred contemporaneously with the transmission of those email communications.

83.     Plaintiff never consented to Defendants and/or Defendant H2's agents, employees, and/or representatives intercepting, disclosing, and using the email communications in Plaintiff's Gmail account.

84.    Based on the foregoing, Defendants and/or Defendant H2's agents, employees, and/or representatives intentionally intercepted, disclosed, and used Plaintiff's email communications with the meaning of the PA Wiretap Act.

85.    Accordingly, Defendants and/or Defendant H2's agents, employees, or representatives violated the PA Wiretap Act, and Defendant H2 is liable for such acts and/or omissions of its agents, employees, or representatives under a theory of *respondeat superior* and the rules of agency.

86.    Additionally, the acts and/or omissions of Defendants and/or Defendant H2's agents, employees, and/or representatives were outrageous and deliberately taken with reckless indifference to and conscious disregard for Plaintiff's federally protected rights under the PA Wiretap Act.

87.    The acts and/or omissions of Defendants and/or Defendant H2's agents, employees, and/or representatives were so outrageous, deliberate, and willful as to entitle Plaintiff to punitive damages from Defendants in order to punish and deter Defendants, Defendant H2's agents, employees, and/or representatives, and others from similar conduct.

88.    Plaintiff has been and continues to be harmed as a direct and proximate result of Defendants and/or Defendant H2's agents, employees, and/or representatives acts and/or omissions.

89.    Plaintiff has suffered damages, including but not limited to emotional pain and suffering, mental distress, humiliation, and harassment.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, granting all such relief as is appropriate pursuant to 18 Pa. Cons. Stat. 18 U.S.C. § 5701, *et. seq.*, including statutory damages, compensatory damages, punitive damages, Plaintiff's

reasonable attorneys' fees, the costs of this action, and any such further relief as the Court deems just and proper.

## COUNT IV - INTRUSION UPON SECLUSION
### Pennsylvania Common Law

90.    Plaintiff incorporates by reference Paragraphs 1 through 89 as if fully restated herein.

91.    Defendants and/or Defendant H2's agents, employees, and/or representatives, while acting in the course and scope of their employment, knowingly, intentionally, and willfully intruded upon the solitude and seclusion of Plaintiff and his private affairs and concerns in accessing his personal, privileged, and confidential emails on his Gmail account.

92.    The acts and/or omissions of Defendants and/or Defendant H2's agents, employees, and/or representatives are substantial and highly offensive to Plaintiff.

93.    The acts and/or omissions of Defendants and Defendant H2's agents, employees, and/or representatives are substantial and highly offensive to a reasonable person in Plaintiff's circumstances.

94.    The information obtained and disclosed by Defendants and/or Defendant H2's agents, employees, and/or representatives from Plaintiff's emails in his Gmail account caused Plaintiff mental suffering, shame, and humiliation.

95.    The information obtained and disclosed by Defendants and/or Defendant H2's agents, employees, and/or representatives from Plaintiff's emails in his Gmail account would have caused mental suffering, shame, and humiliation to a person of ordinary sensibilities in Plaintiff's circumstances.

96. Accordingly, based on the foregoing, Defendants and/or Defendant H2's agents, employees, and/or representatives violated Pennsylvania law based on an invasion of privacy and, specifically, intrusion upon seclusion.

97. Defendant H2 is liable for the acts and/or omissions of its agents, employees, and/or representatives under a theory of *respondeat superior* and the rules of agency.

98. Additionally, the acts and/or omissions of Defendants and/or Defendant H2's agents, employees, and/or representatives were outrageous and deliberately taken with reckless indifference to and conscious disregard for Plaintiff's rights under Pennsylvania law.

99. The acts and/or omissions of Defendants and/or Defendant H2's agents, employees, and/or representations were so outrageous, deliberate, and willful as to entitle Plaintiff to punitive damages from Defendants in order to punish and deter Defendants, Defendant H2's agents, employees, and/or representatives, and others from similar conduct.

100. Plaintiff has been and continues to be harmed as a direct and proximate result of Defendants and/or Defendant H2's agents, employees, and/or representatives acts and/or omissions.

101. Plaintiff has suffered damages, including but not limited to emotional pain and suffering, mental distress, humiliation, and embarrassment.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, granting all such relief as is appropriate pursuant to Pennsylvania law, including compensatory damages, punitive damages, Plaintiff's reasonable attorneys' fees, the costs of this action, and any such further relief as the Court deems just and proper.

## COUNT V – INVASION OF PRIVACY, PUBLIC DISCLOSURE OF PRIVATE FACTS
### Pennsylvania Common Law

102. Plaintiff incorporates by reference Paragraphs 1 through 102 as if fully restated herein.

103. Defendants and/or Defendant H2's agents, employees, and/or representatives, while acting in the course and scope of their employment, knowingly, intentionally, and willfully gave publicity to Plaintiff's private, privileged, and confidential emails with Attorney Bond, as well as to her work product.

104. The above-described publicity to private facts was highly offensive to Plaintiff.

105. The above-described publicity to private facts would be highly offensive to a reasonable person in Plaintiff's circumstances.

106. The above-described publicity to private facts was not of legitimate concern to the public.

107. Accordingly, based on the foregoing, Defendants and/or Defendant H2's agents, employees, and/or representatives violated Pennsylvania law based on an invasion of privacy and, specifically, public disclosure of private facts.

108. Defendant H2 is liable for the acts and/or omissions of its agents, employees, and/or representatives under a theory of *respondeat superior* and the rules of agency.

109. Additionally, the acts and/or omissions of Defendants and/or Defendant H2's agents, employees, and/or representatives were outrageous and deliberately taken with reckless indifference to and conscious disregard for Plaintiff's rights under Pennsylvania law.

110. The acts and/or omissions of Defendants and/or Defendant H2's agents, employees, and/or representations were so outrageous, deliberate, and willful as to entitle Plaintiff to punitive

damages from Defendants in order to punish and deter Defendants, Defendant H2's agents, employees, and/or representatives, and others from similar conduct.

111. Plaintiff has been and continues to be harmed as a direct and proximate result of Defendants and/or Defendant H2's agents, employees, and/or representatives acts and/or omissions.

112. Plaintiff has suffered damages, including but not limited to emotional pain and suffering, mental distress, humiliation, and embarrassment.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, granting all such relief as is appropriate pursuant to Pennsylvania law, including compensatory damages, punitive damages, Plaintiff's reasonable attorneys' fees, the costs of this action, and any such further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all claims.

**McNEES WALLACE & NURICK LLC**

Dated: June 29, 2026      By:    */s/ Langdon T. Ramsburg*
Langdon T. Ramsburg (I.D. No. 318749)
M. Abbegael Giunta (I.D. No. 94059)
100 Pine Street, P.O. Box 1166
Harrisburg, PA 17108-1166
Tele: (717) 232-8000
Fax: (717) 237-5300
lramsburg@mcneeslaw.com
agiunta@mcneeslaw.com

*Attorneys for Plaintiff Scott Carvell*